UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CORNELIUS HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 4945 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| MIRAMED REVENUE GROUP, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Cornelius Hudson brought this *pro se* suit under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against Miramed Revenue Group, his former employer. Doc. 6. Discovery has closed, and a jury trial is set for January 30, 2017. Doc. 33. Miramed has moved for summary judgment. Doc. 37. The motion is granted.

**Background**

Consistent with the local rules, Miramed filed a Local Rule 56.1(a)(3) statement of undisputed facts along with its summary judgment motion. Doc. 42. Each factual assertion in the Local Rule 56.1(a)(3) statement cites evidentiary material in the record and is supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Local Rule 56.1(b)(3)(B) required Hudson to file a "concise response to [Miramed's] statement that shall contain … a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R.

1

56.1(b)(3)(B). Despite having been served with a Local Rule 56.2 Notice, Doc. 43, which explained in detail the requirements of Local Rule 56.1, Hudson did not properly respond in the manner required by Local Rule 56.1(b)(3)(B).

Hudson did file a two-page document entitled "56.1(3) statement of disputed facts," Doc. 49, but that document does not comply with Local Rule 56.1(b)(3)(B). As just noted, Local Rule 56.1(b)(3)(B) requires the non-movant to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Hudson's two-page document neither contains numbered paragraphs nor syncs up with the factual assertions set forth in Miramed's Local Rule 56.1(a)(3) statement, so it comes nowhere close to qualifying as a Local Rule 56.1(b)(3)(B) response.

The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (citing cases); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Here, the problem is not that Hudson failed to *strictly* comply with Local Rule 56.1(b)(3)(B); rather, it is that he did not comply *at all*. This court need not and will not attempt to map the factual assertions in Hudson's "56.1(3) statement of disputed facts" onto the factual assertions in Miramed's Local Rule 56.1(a)(3) statement to determine whether Hudson has adduced a genuine dispute of material fact as to any of Miramed's assertions; that is the purpose of a properly constructed Local Rule 56.1(b)(3)(B) response. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d

215, 219 (7th Cir. 2015) ("The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a clear, concise, and obvious fashion, for quick reference of the court. The district court did not abuse its discretion in finding Curtis failed to comply with Rule 56.1 requirements."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules.").

Hudson's status as a *pro se* litigant does not excuse his failure to comply with Local Rule 56.1(b)(3)(B). *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant.") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven pro se litigants must follow rules of civil procedure."). Given Hudson's failure to comply with Local Rule 56.1(b)(3)(B), the facts set forth in Miramed's Local Rule 56.1(a)(3) statement are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Curtis*, 807

F.3d at 218 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

Before proceeding to the facts, it bears mention that Hudson's two-page document might be considered a Local Rule 56.1(b)(3)(C) statement of additional facts. Like Local Rule 56.1(b)(3)(B), however, Local Rule 56.1(b)(3)(C) requires "references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(C). Hudson's document does not cite any record material, and so its assertions are not properly part of the summary judgment record.

The court is mindful that "a nonmovant's failure to … comply with Local Rule 56.1 … does not … automatically result in judgment for the movant. … [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884. The court therefore will recite the facts in Miramed's Local Rule 56.1(a)(3) statement and then determine whether, on those facts, Miramed is entitled to summary judgment. The court sets forth the following facts as favorably to Hudson, the non-movant, as the record and Local Rule 56.1 allow. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015). In considering Miramed's motion, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015).

Hudson began working for Miramed as a debt collector in September 2012. Doc. 42 at ¶ 1. He worked on a "dialer team" within the "Self Pay" department. *Id*. at ¶ 4. Each member

4

of the dialer team was given information about a person who was indebted to a Miramed customer, and the member's job was to call that person to try to work out a payment plan. *Ibid*. At the end of each call, a computer would generate the employee's next assignment. *Ibid*. Hudson was the only African-American male in the department at certain points, but fifteen other African-American males worked in the department at other points during the same period. *Id*. at ¶ 13. The majority of employees in Hudson's department were African American for his entire tenure at Miramed. *Id*. at ¶ 27.

Collectors in Hudson's department received an hourly base salary and were eligible for commissions if they met monthly targets. *Id*. at ¶ 5. Each collector made the same type of calls and was eligible for the same commissions. *Id*. at ¶ 6. Hudson's duties did not change throughout his employment, and neither did his base hourly wage of $11.50. *Id*. at ¶¶ 1, 5. Like many other collectors, Hudson never received a high enough score on an individual performance review to be eligible for an increase in hourly pay. *Id*. at ¶ 23. Even though his base salary never increased, Hudson did receive commissions. *Id*. at ¶ 17. Hudson's seat assignment and phone extension changed several times, but there is no evidence that those changes affected his income. *Id*. at ¶ 19.

There were several occasions when Hudson notified Miramed of errors it had made. At one point, management transferred from Hudson to another collector the account of a Miramed customer named Miller. *Id*. at ¶ 9. Hudson spoke to his supervisor, and then Miller's account was transferred back to Hudson; there is no evidence that this temporary transfer affected Hudson's compensation. *Ibid*. Separately, Miramed was once late in processing the payment of a customer named Turner, so Hudson did not receive credit for the transaction until the following month; there is no evidence to refute Miramed's explanation that the payment form had been

5

misplaced. *Id.* at ¶¶ 9-10. On another occasion, money was incorrectly deducted from Hudson's paycheck, but a check for the amount of the underpayment was issued to him the following week. *Id.* at ¶ 16.

Hudson had some minor health problems while at Miramed. On one day when he was not feeling well, Hudson asked his supervisor to speak to the Human Resources representative. *Id.* at ¶ 18. The supervisor replied, "Don't you see I'm doing something? I'm checking my voice mails." *Ibid.* Hudson had to wait several minutes to be taken to Human Resources, and then his request to leave for the day was granted. *Ibid.* Hudson also suffered a hematoma after donating blood at a Miramed blood drive. *Id.* at ¶ 24. He used four hours of paid sick leave to attend to this medical issue, and Miramed did not compensate him further. *Ibid.* Hudson resigned from Miramed on May 4, 2015. *Id.* at ¶ 1.

## Discussion

After exhausting his remedies with the EEOC, Hudson timely filed this suit, which alleges race and color discrimination under § 1981 and Title VII. Doc. 6. The complaint alleges that Miramed "failed to promote the plaintiff," that "payroll [was] done incorrectly," that Miramed "denied phone line extension back, denied human resources when requested," and that Miramed management "repeat[e]dly … switched plaintiff[']s accounts from his assigned desk, causing him to lose bonus & commission opportunities." *Id.* at 4-5. Miramed's initial brief generously characterizes Hudson's suit as alleging eight separate discriminatory actions: (1) paying Hudson less than he was owed on one occasion; (2) changing his seat assignment and phone extension; (3) delaying his access to Human Services one day; (4) denying him time off on Easter 2014; (5) failing to reimburse him for using four hours of paid time off when he suffered a hematoma; (6) transferring two of his accounts to other employees; (7) not giving him

a bonus check that he earned for March 2014; and (8) not raising his base hourly pay. Doc. 37 at 16-17.

Hudson claims that Miramed discriminated against him on the basis of his race and color in violation of Title VII and § 1981. "The same requirements for proving discrimination apply to claims under Title VII [and] § 1981." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 n.7 (7th Cir. 2010). So the court will cite only Title VII precedents in addressing Hudson's Title VII and § 1981 claims.

To proceed with a Title VII claim, Hudson must show that he suffered a "materially adverse employment action." *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1068-69 & n.9 (7th Cir. 2012); *see also de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008). "A materially adverse employment action is something more disruptive than a mere inconvenience or an alteration of job responsibilities. While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (citations and internal quotation marks omitted). The Seventh Circuit has defined a materially adverse employment action as "one that diminishes an employee's compensation or benefits, constitutes a nominally lateral transfer but nonetheless reduces an employee's career prospects, or subjects an employee to altered working conditions that are degrading and humiliating." *Whigum v. Keller Crescent Co.*, 260 F. App'x 910, 913 (7th Cir. 2008). For any of these categories, such an action must "materially alter the terms and conditions of employment." *Dass*, 675 F.3d at 1069.

7

Hudson's discrimination claims fail because he did not suffer a materially adverse employment action. The record shows that Miramed did the following with respect to the eight above-referenced allegedly discriminatory acts: (1) fully reimbursed Hudson for underpayments on the paycheck in question, Doc. 42 at ¶ 16; (2) occasionally changed his seat assignment and phone extension, *id*. at ¶ 19; (3) delayed his access to the Human Resources Department for several minutes one day, *id*. at ¶ 18; (4) allowed him to take time off on Easter 2014, Doc. 37-2 at 3, 10; (5) counted his absence for an injury sustained at a company-sponsored blood drive as paid time off, Doc. 42 at ¶ 24; (6) temporarily transferred one customer account and gave him credit for another account one month late, *id*. at ¶¶ 9-10; (7) paid him a March 2014 bonus check that he earned, *id*. at ¶ 17; and (8) kept his base salary constant because he did not qualify for a raise, *id*. at ¶ 23. There is no evidence that any of these actions diminished Hudson's compensation or benefits, reduced his career prospects, or altered his working conditions in a manner that was degrading or humiliating. Most are not adverse at all, and none of them "materially alter[ed] the terms and conditions of [Hudson's] employment." *Dass*, 675 F.3d at 1069; *Poullard v. McDonald*, 829 F.3d 844, 858-59 (7th Cir. 2016) (holding for purposes of a retaliation claim that not giving an employee a raise is not a materially adverse action because "the conditions of [the plaintiff's] employment remained exactly the same").

Even if he did suffer a materially adverse employment action, Hudson's claims would fail because the record would not allow a reasonable jury to find that any such action was motivated by his race or color. Until very recently, plaintiffs in the Seventh Circuit could avoid summary judgment in Title VII discrimination cases by making one of two showings. *See*, *e.g.*, *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016); *Carothers v. Cnty. of Cook*, 808 F.3d 1140, 1148-49 (7th Cir. 2015). First, a plaintiff could attempt to satisfy the so-called "direct method"

of proof; under that method, the court would evaluate whether the plaintiff had "present[ed] sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Harper v. Fulton Cnty.*, 748 F.3d 761, 765 (7th Cir. 2014); *see also Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Second, a plaintiff could avoid summary judgment by satisfying the so-called "indirect method" of proof. First described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the indirect method allows the plaintiff to shift the burden of proof on the question of intent to the defendant once the plaintiff makes certain showings. *See id*. at 802. Specifically, the plaintiff first has to make a *prima facie* case, showing that "(1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment." *Kuttner v. Zaruba*, 819 F.3d 970, 976 (7th Cir. 2016). If the plaintiff makes her *prima facie* case, the burden shifts to the defendant to give a non-discriminatory reason for treating the plaintiff the way it did, and if the defendant meets *its* burden, the burden shifts back to the plaintiff to show that the defendant's explanation is pretextual. *See McDonnell Douglas*, 411 U.S. at 802, 804.

That was the old way. In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit rejected the distinction between the direct and indirect methods, stating that "[t]he time has come to jettison these diversions and refocus analysis on the substantive legal issue." *Id*. at 764. The substantive legal issue in *Ortiz* was "[w]hether a reasonable juror could conclude that Ortiz would have kept his job if he had a different ethnicity, and everything else had remained the same." *Ibid*. The district court appeared to have considered some evidence under the "direct method" but not under the "indirect method," and vice versa, *id.* at 763, and the Seventh Circuit held that to be reversible error, *id*. at 767. In the process, the Seventh Circuit

9

explicitly overruled numerous precedents "to the extent that these opinions insist on the use of the direct- and-indirect framework." *Id*. at 765-66 (overruling in part *Andrews v. CBOCS W., Inc.*, 743 F.3d 230 (7th Cir. 2014); *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729 (7th Cir. 2011); *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487 (7th Cir. 2007); *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498 (7th Cir. 2004); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524 (7th Cir. 2003); *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605 (7th Cir. 2001); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612 (7th Cir. 2000); *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391 (7th Cir. 1997); *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988); *La Montagne v. Am. Convenience Prods., Inc.*, 750 F.2d 1405 (7th Cir. 1984)). *Ortiz* also explicitly overruled precedents that instructed district courts to determine under the direct method whether the plaintiff had presented a "convincing mosaic" of circumstantial evidence. *Id.* at 765 (overruling in part *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531 (7th Cir. 2016); *Chaib v. Indiana*, 744 F.3d 974 (7th Cir. 2014); *Cloe v. City of Indianapolis*, 712 F.3d 1171 (7th Cir. 2013); *Smith v. Bray*, 681 F.3d 888 (7th Cir. 2012); *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670 (7th Cir. 2012); *Silverman*, 637 F.3d at 729; *Phelan v. Cook Cnty.*, 463 F.3d 773 (7th Cir. 2006); *Koszola v. Bd. of Educ. of Chi.*, 385 F.3d 1104 (7th Cir. 2004); *Rhodes*, 359 F.3d at 498; *Cerutti v. BASF Corp.*, 349 F.3d 1055 (7th Cir. 2003); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081 (7th Cir. 2000)). *Ortiz* makes clear, though, that it does not undermine "[t]he burden-shifting framework created by *McDonnell Douglas*," explaining:

> Today's decision does not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand. We are instead concerned about the proposition that evidence must be sorted into different piles, labeled "direct" and "indirect," that are evaluated differently. Instead, all evidence belongs in a single pile and must be evaluated as a whole. That conclusion is consistent with *McDonnell Douglas* and its successors.

*Ortiz*, 834 F.3d at 766.

10

To survive summary judgment, then, a plaintiff must present evidence that, considered as a whole, would allow a reasonable juror to conclude that the plaintiff was discriminated against due to a protected characteristic, suffering an adverse employment action. *McDonnell Douglas* identifies one pattern that the evidence might fit that would enable a reasonable juror to find discrimination—namely, a pattern of evidence showing that the plaintiff belonged to a protected class, met her employer's legitimate expectations, suffered an adverse employment action, and was similarly situated to other employees who were not members of the protected class and who were treated better, provided that the defendant fails to articulate a reasonable alternative explanation or the plaintiff shows that the defendant's proffered alternative explanation is a pretext. But the pattern identified in *McDonnell Douglas* is just one way that the record evidence could enable a reasonable juror to find discrimination. A district court must not limit its analysis to *McDonnell Douglas* or treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the broader question whether "a reasonable factfinder [could] conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id*. at 765.

As noted above, the relevant facts are those set forth in Miramed's Local Rule 56.1(a)(3) statement. *See Koszola*, 385 F.3d at 1109 ("a district court is entitled to decide the motion based on the factual record outlined in the Local Rule 56.1 statements") (brackets and internal quotation marks omitted). That statement contains no facts that could constitute evidence of discrimination. Hudson's race or color was never mentioned in conjunction with any action taken toward him. The only facts regarding similarly situated coworkers indicate that they were treated the same as Hudson. Doc. 42 at ¶¶ 6, 7, 19, 23, 24, 26. In fact, Hudson conceded at his deposition that there was nothing that Miramed's management said or did that made him think

11

that he was discriminated against on the basis of race. *Id*. at ¶ 28. Hudson's failure to present evidence that would allow a reasonable juror to conclude that he was discriminated against on the basis of race or color provides a second and independent ground for granting summary judgment to Miramed.

**Conclusion**

For the foregoing reasons, Miramed's summary judgment motion is granted. Judgment will be entered in favor of Miramed and against Hudson.

November 26, 2016

_____
United States District Judge